IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| JUSTIN LEVELT SIMMONS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 1:13cv1132 |
| | ) | 1:12cr234-1 |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM OPINION AND ORDER**

THOMAS D. SCHROEDER, District Judge.

Before the court is the motion of Petitioner, Justin Levelt Simmons, to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. (Doc. 15.)[1] The United States has responded (Doc. 27), and the motion is ripe for resolution.[2] For the reasons set forth below, the motion will be denied.

I. BACKGROUND

On September 5, 2012, Simmons pled guilty to two counts of possessing a firearm as a convicted felon in violation of 18 U.S.C.

---

[1] All citations are to the criminal case, 1:12cr234-1.

[2] Simmons sought, and the court granted, extensions of time to file a reply brief. (Docs. 29, 30, 31, 32.) However, the most recent order granting an extension was returned as undeliverable on March 20, 2015. Even an incarcerated litigant has an obligation to keep the court informed of his or her whereabouts. E.g., Saguilan v. Bullock, No. 1:07cv29, 2010 WL 3260158, at *2 n.3 (M.D.N.C. Aug. 16, 2010), recommendation adopted, slip op. (M.D.N.C. Sept. 3, 2010); Hibbert v. Apfel, No. 99cv4246, 2000 WL 977683, at *2 (S.D.N.Y. July 17, 2000). Given the substance of Simmons' claims, any reply would likely be futile, but given the lapse of time without any filing by Simmons, the court deems his opportunity to file a reply to have been waived.

§ 922(g)(1). At sentencing, the two counts were grouped pursuant to U.S.S.G. § 3D1.2(d), resulting in a total offense level of 27, a criminal history category of IV, and a guideline range of 100-120 months. (Doc. 26 at 7, 15-16, 18; Doc. 33 at 5.)[3] On December 14, 2012, Simmons was sentenced to 108 months of imprisonment on counts one and two, concurrent. (Doc. 26 at 30.) He did not appeal but instead filed the present § 2255 motion.

Count one arose from Simmons' possession of a .45-caliber handgun on March 4, 2012. On that date, officers received a report of a suspicious person with a gun at an area gas station. (Doc. 10 at 1.) When officers arrived, they observed Simmons pumping gas into a Nissan Maxima bearing the license plate number reported to police. (Id.) The officers approached Simmons and began a conversation. (Id.) Simmons appeared visibly nervous and repeatedly moved his right hand towards his waistband in a manner that led the officer to believe he was attempting to conceal something. (Id. at 1-2.) The officers subsequently performed a frisk for officer safety. (Id. at 2.) During the pat-down, one of the officers felt what he immediately recognized to be the handle of a gun under Simmons' clothes near his right waistband. (Id.) Simmons was then placed under arrest. (Id.) A subsequent

---

[3] The guideline range was 100-125 months but became 100-120 months in light of the ten-year statutory maximum. (Doc. 26 at 16.)

search of Simmons revealed thirty-three small baggies of what officers believed to be crack cocaine. (Id.)

Count two arose from Simmons' possession of a .40-caliber handgun on May 17, 2012. (Id. at 4.) On that date, an officer of the Durham police department conducted a traffic stop of a Nissan Maxima for a window tint violation. (Id.) Simmons was the driver of the vehicle and his niece, Andrea Wilson, was the sole passenger. (Id.) During their initial conversation, Simmons informed the officer that he did not have a license. (Id.) Simmons was visibly shaking, moving about in his seat, and speaking so quickly that the officer had to ask him to calm down. (Id.) The officer asked for permission to perform a search of the vehicle. (Id.) The factual basis supporting Simmons' plea on count two provides that he consented to a search of the vehicle, but he now denies that he did. (Id.) A search of the vehicle revealed a .40-caliber handgun located under the passenger seat and an AR-15 in the trunk. (Id. at 4-5.) Ms. Wilson stated that when the officer initiated the traffic stop, Simmons passed the handgun to her and asked her to put it under her seat. (Id. at 5.) Simmons initially denied knowing of the gun, but when confronted with Ms. Wilson's statement and told that his fingerprints would be on the gun, he gave a written statement admitting that he passed the gun to Ms. Wilson. (Id. at 6.)

3

## II. ANALYSIS

### A. Standard of Review

A petitioner seeking relief under § 2255 bears the burden of showing by a preponderance of the evidence (1) that his sentence or conviction violates the Constitution or laws of the United States; (2) that the court was without jurisdiction to impose such a sentence; (3) that the sentence was in excess of the maximum authorized by law; or (4) that the sentence or conviction is otherwise subject to collateral attack. 18 U.S.C. § 2255; Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958) (per curiam); Hearne v. United States, Nos. 1:10cv25, 1:03cr217, 2014 WL 897004, *1 (M.D.N.C. Mar. 6, 2014). "[T]he scope of review of non-constitutional error is more limited than that of constitutional error; a nonconstitutional error does not provide a basis for collateral attack unless it involves 'a fundamental defect which inherently results in a complete miscarriage of justice' or is 'inconsistent with the rudimentary demands of fair procedure.'" United States v. Mikalajunas, 186 F.3d 490, 495-96 (4th Cir. 1999) (citations omitted). Pro se motions are to be liberally construed. Fields v. Att'y Gen. of State of Md., 956 F.2d 1290, 1298 n.20 (4th Cir. 1992).

### B. Section 2255 Motion

Simmons challenges his conviction and sentence on nine grounds, some of which are duplicative. Moreover, ground five is

4

not a basis for relief but merely an argument as to why Simmons' failure to pursue a direct appeal does not preclude collateral review. (Doc. 15 at 10.) Ground nine is merely a request for an evidentiary hearing. (Id. at 11.)

### 1. Ineffective Assistance of Counsel

In grounds one, two, three, and six, Simmons contends that his defense counsel provided ineffective assistance of counsel by (1) inducing Simmons to plead guilty, (2) failing to familiarize himself with the facts of the case and prepare for trial, (3) failing to interview certain witnesses, (4) failing to file a motion to suppress certain evidence, and (5) failing to challenge what Simmons contends is a multiplicitous indictment. (Id. at 4-10.) Each claim is without merit.

To prove ineffective assistance of counsel, a petitioner must show that (1) "counsel's representation fell below an objective standard of reasonableness" and (2) "the deficient performance prejudiced" the petitioner. Strickland v. Washington, 466 U.S. 668, 687-88 (1984). To satisfy the first prong of Strickland, the petitioner must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). This presumption recognizes that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way." Id. To satisfy the second prong of

5

Strickland, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. "Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffectiveness claim." Id. at 700. Moreover, where the court can dispose of a petitioner's claim due to a lack of prejudice, it need not consider the deficient performance prong. Id. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.").

Simmons' claim that defense counsel induced him to plead guilty is without merit. His principal basis for this claim is that counsel "tricked" him into pleading guilty by representing that the court would impose a sentence of 51 to 71 months, as opposed to the 108 months that were imposed. (Doc. 16 at 11.) Simmons argues that this representation made his plea involuntary. (Doc. 15 at 10.) There are at least two fatal problems with this allegation.

First, Simmons has not alleged that he would have "pleaded not guilty and insisted on going to trial" in the absence of the alleged representation. See, e.g., Hill v. Lockhart, 474 U.S. 52,

6

60 (1985); Bell v. United States, No. 4:11cr23-H, 2014 WL 6893788, at *2 (E.D.N.C. Dec. 5, 2014). Thus, he has not shown prejudice.

Second, the allegation is in direct conflict with representations Simmons made to the court during his plea colloquy. "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005). No extraordinary circumstances are present here. The court asked Simmons, "Did anybody make any threats or promises to you in an effort to get you to plead guilty in this case?" (Doc. 25 at 7.) Simmons replied, "No, sir." (Id.) The court further asked Simmons, "Do you understand that the sentencing guideline range that the Court adopts for your case and the sentence that the court imposes may be different from any estimate of either one of those that [defense counsel] or anybody else may have given you." (Id. at 10.) Simmons replied, "Yes, sir, I understand." (Id.) The court asked, "Do you understand that the Court has the authority to impose a sentence that is more or less severe than the sentence called for by the guidelines?" (Id.) Simmons replied, "Yes, sir." (Id.) Finally, the court explained the elements and maximum penalties to Simmons and asked whether he understood the indictment

7

and the charges against him. (Id. at 5, 8, 13.) He replied, "Yes, sir." (Id. at 5.) Moreover, Simmons represented to the court that he was pleading guilty because he is in fact guilty. (Id. at 14.) Accordingly, even if Simmons had alleged that he would have insisted on going to trial absent the alleged representation, his allegation of inducement is "so palpably incredible" in light of his plea colloquy that it must be rejected without a hearing. Lemaster, 403 F.3d at 220.

Simmons' allegation that counsel failed to familiarize himself with the facts of the case and prepare for trial must also be rejected. (Doc. 15 at 4, 10.) Simmons has presented no evidence to support this claim, and other evidence shows it to be frivolous. Counsel represents that he met with Simmons on eight different occasions. (Doc. 27-1 at 4.) At least one meeting lasted for approximately forty minutes. (Id. at 1.) In their first meeting, counsel represents that he explained the nature of the charges and the potential penalties to Simmons. (Id. at 1-2.) In later meetings, counsel represents that he discussed the strength of the government's case and the relative merits of different strategies. (Id. at 2, 5.) Moreover, counsel's performance during the change of plea hearing and sentencing hearing showed a strong grasp of the charges, evidence, and Simmons' personal circumstances. (E.g., Doc. 25 at 17 (reserving the right to object to the presence of drugs and other relevant conduct contained in the factual

8

basis); Doc. 26 at 10-13 (arguing that Simmons did not constructively possess the AR-15 found in the trunk of the vehicle he was driving); id. at 17-18 (arguing that Simmons' lack of a role model should be considered significant under 18 U.S.C. § 3553(a)).) Finally, at the change of plea hearing, Simmons represented that he had fully considered all of his options up to that point, had sufficient time to do so, and was "fully satisfied" with the services his counsel had provided to him and the advice he had given him. (Doc. 25 at 6-7.) Accordingly, Simmons has failed to establish either prong of Strickland, and his claim must be rejected.

Simmons' claim that counsel provided ineffective assistance by failing to interview Kimberly Faulk is also without merit. (Doc. 15 at 4.) Ms. Faulk has submitted an affidavit that she was the owner of the handgun and that Simmons was not aware of its presence in the car. (Doc. 16 at 52.) Ms. Faulk's claim that Simmons was unaware of the handgun is in conflict with Simmons' statement to police that he passed the handgun to Wilson.[4] (Doc. 10 at 5-6; Doc. 25 at 18 (not objecting to this portion of the factual basis).) It is also inconsistent with Simmons' plea of guilty on count two, as he could not have been convicted of

---

[4] Ms. Wilson, who twice stated that Simmons passed the gun to her, has now changed her story. She now claims she removed the handgun from the glove compartment and placed it under her seat. (Doc. 16 at 55.) This testimony also conflicts with Simmons' own statement to police and his plea of guilty to count two. (Doc. 10 at 5-6; Doc. 25 at 18.)

9

voluntarily and intentionally possessing the handgun if he was unaware of its presence. See United States v. Gallimore, 247 F.3d 134, 136 (4th Cir. 2001) (stating the elements of the offense). Moreover, Faulk's status as the rightful owner of the gun would have provided Simmons with no defense. Counsel explained to Simmons that he was being charged with possessing the handgun as a felon and that it was immaterial who owned the gun. (Doc. 27-1 at 5.) Counsel's advice was correct; ownership is not an element of 18 U.S.C. § 922(g)(1). E.g., United States v. Loveland, No. 1:11cr13, 2013 WL 1867071, at *4-5 (W.D.N.C. May 3, 2013) ("An essential element of each of these counts was the possession of the Bushmaster, not its ownership."). Simmons conclusively admitted possession during his plea colloquy, and possession is all that is required. (Doc. 25 at 14.) Accordingly, he has failed to show either prong of Strickland, and his claim must be dismissed.

Simmons next claims that counsel provided ineffective assistance by failing to move to suppress certain evidence. First, Simmons claims that the frisk of his person on March 4, 2012, which produced the .45-caliber handgun (count one) and thirty-three baggies of crack cocaine, was unconstitutional. (Doc. 15 at 5.) Second, he claims that the search of the Maxima on May 17, 2012, which produced the .40-caliber handgun, was unconstitutional. (Id.) He contends that counsel should have moved to suppress the

10

evidence from both incidents. (Id.) Both claims are without merit.

With regard to the March 4, 2012 incident, Simmons concedes that he was acting "nervous and repeatedly moved his hand towards his waistband." (Doc. 16 at 4.) He does not dispute that officers were responding to a report of a suspicious person with a gun and that he was pumping gas into the vehicle described to police. (Doc. 10 at 1; Doc. 16 at 4.) Under these circumstances, the officers clearly had reasonable suspicion to frisk Simmons for officer safety. See United States v. Powell, 666 F.3d 180, 186 (4th Cir. 2011) ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." (quoting Terry v. United States, 392 U.S. 1, 27 (1968))). The frisk revealed a .45-caliber handgun in Simmons' waistband. (Doc. 16 at 4.) Simmons was handcuffed and officers subsequently found a pill bottle containing thirty-three baggies of crack cocaine in his left front pants pocket. (Id.; Doc. 10 at 2.) Moving to suppress the evidence under these circumstances would have been futile, and Simmons can show no prejudice from counsel's failure to do so. See Garrett v. United States, 78 F.3d 1296, 1303 n.11 (8th Cir. 1996) ("Ineffective assistance should not be found under Strickland when

11

counsel fails to perform those acts which clearly appear to be futile or fruitless at the time the decision must be made.").

With regard to the May 17, 2012 incident, the officer contended that Simmons consented to the search that produced the .40-caliber handgun. (Doc. 27-1 at 3.) The factual basis provided that Simmons consented to the search, and he did not challenge this part of the factual basis. (Doc. 10 at 4; Doc. 25 at 18.) Simmons now contends that he did not consent to the search. (Doc. 16 at 16.) Counsel explained to Simmons that to succeed on a motion to suppress he would need to convince the court that his testimony was more credible than the officer's. (Doc. 27-1 at 5.) Counsel advised Simmons that the motion was unlikely to succeed. (Id.) This advice was not unreasonable, especially in light of the fact that Simmons had already compromised his credibility by changing his story about whether he passed the gun to Ms. Wilson. (Doc. 10 at 5-6.) Counsel was not ineffective by failing to pursue a motion to suppress under these circumstances, and Simmons cannot show prejudice. See Garrett, 78 F.3d at 1303 n.11.

Finally, Simmons contends his indictment was multiplicitous and that counsel was ineffective for failing to challenge its invalidity. (Doc. 15 at 6-7.) But Simmons' indictment was clearly not multiplicitous. (See Doc. 1.) An indictment is multiplicitous where it charges a single offense in multiple counts. United States v. Goodine, 400 F.3d 202, 207 (4th Cir. 2005). Simmons'

12

indictment, by contrast, charged him with two separate violations of § 922(g)(1) on two separate occasions in two separate counts. (Doc. 1.)  The two separate violations of § 922(g)(1) were over two months apart.  (Id. at 1-2.)  Nevertheless, Simmons appears to advance the following novel argument: the indictment is multiplicitous because it charges him with a violation of § 922(g)(1) and an element of § 922(g)(1) is that the defendant has been previously convicted of a crime punishable by imprisonment for a term exceeding one year.  (See Doc. 16 at 23.)  If this were correct, then every indictment charging a violation of § 922(g)(1) would be multiplicitous.  Simmons was not prejudiced by counsel's failure to challenge the indictment on a clearly frivolous basis. See Garrett, 78 F.3d at 1303 n.11.

For the reasons provided above, each of Simmons' claims of ineffective assistance of counsel is meritless.  Accordingly, to the extent Simmons advances a cumulative error argument, it too must be rejected.

### 2. Alleged Rule 11 Errors

In ground four, Simmons contends that the district court failed to comply with the requirements of Federal Rule of Criminal Procedure 11 when determining there was a factual basis for his plea of guilty.  (Doc. 15 at 8.)  Rule 11(b)(3) requires the court to "determine that there is a factual basis for the plea" prior to "entering judgment on a guilty plea."  Fed. R. Crim. P. 11(b)(3).

13

During Simmons' plea colloquy, the court asked Simmons whether he had read the factual basis to his satisfaction. (Doc. 25 at 18.) Simmons replied that he had. (Id.) The factual basis established the elements of both count one and count two. With regard to count one, the factual basis established that on March 4, 2012, having previously been convicted of a crime punishable by imprisonment for a term exceeding one year, Simmons possessed a .45-caliber handgun that had previously traveled in interstate commerce. (Doc. 10 at 2-3.) The factual basis established the same with regard to count two, albeit that Simmons possessed a .40-caliber handgun on May 17, 2012. (Id. at 3-7); Gallimore, 247 F.3d at 136. Simmons was given an opportunity to object but did not object to the portion of the factual basis establishing the elements of each count. (Doc. 25 at 18.) Only then did the court deem Simmons guilty of both counts. (Id.) Therefore, the court fully complied with the requirements of Rule 11(b)(3).[5]

---

[5] In his attached memorandum of law, Simmons contends that the court violated virtually every requirement of Federal Rule of Criminal Procedure 11 and 32. (Doc. 16 at 26-29.) Simmons makes only four specific allegations: (1) that the court "failed to inform him of the nature of the charges against him," (2) that the court failed to provide him with the opportunity to ask questions about the charges, (3) that the court failed to address him personally, and (4) that the court "failed to explain the maximum possible penalty provided by law, including the effect of a supervised release term." (Id. at 30.) Each claim is meritless. (See Doc. 25 at 12-13 (explaining the nature of the charges and the elements that must be established); id. at 5 (asking whether Simmons understands the charges against him); id. (addressing Simmons personally); id. at 8-9 (explaining the maximum penalties and the effect of supervised release). Simmons also contends, in conclusory fashion, that the court violated various other provisions of Rule 11 and 32. (Doc. 16 at 27-29.) He does not specify where or how the court

14

### 3. Challenges to Sentencing

In ground seven, Simmons contends that the district court's unconstitutional application of enhancement points created an erroneous imposition of his sentence. (Doc. 15 at 10.) In Simmons' view, the court acted in violation of Alleyne v. United States, 133 S. Ct. 2151 (2013), by imposing certain sentencing enhancements on the basis of facts not alleged in his indictment or admitted by him through his guilty plea.[6] (Doc. 16 at 38.) However, none of the sentencing enhancements applied by the court increased the maximum or mandatory minimum sentence Simmons faced. (See Doc. 26.) Alleyne does not stand as an absolute bar to fact finding by sentencing courts. 133 S. Ct. at 2163 ("Our ruling today does not mean that any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding, does not violate the Sixth Amendment."). Moreover, Alleyne has

---

violated the rules, but merely cites the requirements of the rules. (Id.) Simmons has not demonstrated how these claims are cognizable on collateral review. Nevertheless, the court has thoroughly reviewed the transcripts of the change of plea hearing and sentencing hearing and finds no prejudicial error therein. (See Docs. 25, 26.)

[6] Simmons also appears to simultaneously claim that he was aware of the court's authority to engage in fact finding and apply enhancements based on relevant conduct, but that this awareness coerced him into pleading guilty. (Doc. 16 at 38.) This is in effect a claim that all judicial fact finding during sentencing is per se unconstitutionally coercive. (See id.) This frivolous argument must be rejected as incompatible with Alleyne, 133 S. Ct. at 2163.

15

not been made retroactively applicable to cases on collateral review. E.g., United States v. Stewart, 540 F. App'x 171, 172 n.1 (4th Cir. 2013) (unpublished)[7]; Simpson v. United States, 721 F.3d 875, 876 (7th Cir. 2013); In re Payne, 733 F.3d 1027, 1029-30 (10th Cir. 2013); Potts v. United States, Nos. 12cv687, 98cr50-1, 2015 WL 4629011, at *3 (M.D.N.C. Aug. 3, 2015). Accordingly, Simmons' Alleyne based claims must be rejected.

In ground eight, Simmons contends that the district court "violated Booker by imposing a sentence that was greater than necessary, and by failing to adequately consider [18 U.S.C.] § 3553(a) factors other than the Guidelines and articulate specific reasons for the sentence imposed as required by § 3553(a)." (Doc. 15 at 10.)

A court errs under United States v. Booker, 543 U.S. 220 (2005), when it (1) "enhances a sentence beyond the maximum authorized by facts found by a jury beyond a reasonable doubt or admitted by the defendant" or (2) "treats the Guidelines as mandatory, rather than advisory." United States v. Rodriguez, 433 F.3d 411, 414 (4th Cir. 2006). Neither form of error was committed by the sentencing court. As noted above, Simmons' 108 month

---

[7] The Fourth Circuit has cautioned that its unpublished opinions have no precedential value but are nevertheless valuable for their persuasive reasoning. See Collins v. Pond Creek Mining Co., 468 F.3d 213, 219 (4th Cir. 2006) (recognizing that "we ordinarily do not accord precedential value to our unpublished decisions" and that such decisions "are entitled only to the weight they generate by the persuasiveness of their reasoning" (citation omitted)).

16

sentence was not in excess of the 120 month maximum he was exposed to by his plea of guilty. 18 U.S.C. §§ 922(g)(1), 924(a)(2); (Doc. 26 at 30). Moreover, the sentencing court expressly recognized that the Sentencing Guidelines are advisory. (Doc. 26 at 30.)

Simmons' claim that the court imposed an unreasonable sentence and failed to comply with §§ 3553(a) and 3553(c) is also without merit. (Doc. 15 at 10.) First, a mere challenge to the reasonableness of a petitioner's sentence is not ordinarily cognizable under § 2255. E.g., Stewart v. United States, No. 2:05cv740, 2006 WL 2076767, at *4 (E.D. Va. July 21, 2006) (citing Mikalajunas, 186 F.3d at 492, 496); Wade v. United States, No. 1:14cv735, 2015 WL 4475609, at *3 (W.D. Mich. July 21, 2015); see also United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992); United States v. Duffy, Nos. 07cv07, 05cr07, 2007 WL 2071780, at *4-5 (E.D. Ky. June 26, 2007).[8]

---

[8] It is not entirely clear Simmons is doing so, but to the extent he contends that his sentence was based on an erroneous determination of what constitutes "relevant conduct," his claim must also be rejected. (Doc. 15 at 10.) This mere "allegation of an ordinary misapplication of the guidelines" is not cognizable under § 2255 because it "does not amount to a miscarriage of justice." See Mikalajunas, 186 F.3d at 492, 496 (emphasis added) ("[A] misapplication of the guidelines typically does not constitute a miscarriage of justice. . . . Appellees' claim that the district court erred in enhancing their offense levels for restraint of the victim is merely an allegation of an ordinary misapplication of the guidelines that does not amount to a miscarriage of justice."). But see Whiteside v. United States, 748 F.3d 541, 549, 551 (4th Cir. 2014) (finding that an erroneous career offender enhancement was so significant as to not constitute an ordinary Guidelines error and justify collateral review), rev'd on other grounds on reh'g en banc, 775 F.3d 180 (4th Cir. 2014). Simmons procedurally defaulted this claim and any challenge to the reasonableness of his sentence by failing to bring a direct appeal. Mikalajunas, 186 F.3d at

17

Second, as demonstrated by the court's evaluation of the § 3553(a) factors, Simmons' sentence was plainly reasonable. "To establish the reasonableness of a sentence, a district court need not explicitly discuss every § 3553(a) factor on the record." United States v. Johnson, 445 F.3d 339, 345 (4th Cir. 2006) (citations omitted). "This is particularly the case when the district court impose[d] a sentence within the applicable Guidelines range." Id. Simmons was given a sentence at the middle of the Guideline range of 108 months. (Doc. 26 at 32.) Moreover, the sentencing court "considered all the § 3553(a) factors in determining" Simmons' sentence and explained the significance of several factors. (Id. at 30.) In compliance with § 3553(c), the court made the following explanation regarding the nature and circumstances of the offenses:

> You did possess firearms in periods of time fairly shortly apart from each other, most disturbing, on March 4, 2012, the .45-caliber gun you had in your waistband at that time, along with, I should add, apparently 4.7 grams of crack cocaine at the time, that according to the report contained hollow-point rounds and one was in the chamber and [it] was a stolen gun.

---

492-93. He does not claim that counsel was ineffective in failing to seek direct appeal, and there is no basis to support a collateral attack of his sentence. See id. ("In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack."). Nevertheless, the court has reviewed the sentencing court's findings on relevant conduct and the enhancements applied and finds that they were not in error. (See Doc. 26.)

(Id.)  The court also explained the need to protect the public and deter Simmons given that he had not been deterred by three prior gun-related charges.  (Id. at 30-31.)  The court also considered Simmons' age, employment, previous gang related activity, drug use, and education.  (Id. at 30-32.)  In light of all of these factors, the court explained that a 108 month sentence within the Guideline range was "sufficient but not any greater than necessary to meet the sentencing objectives of Section 3553(a)."  (Id. at 30.)  Accordingly, Simmons' challenge to the reasonableness of his sentence must be rejected.

### III. CONCLUSION

For the reasons stated, after careful review of the record, the court finds each of the claims in Simmons' § 2255 petition to be meritless.

IT IS THEREFORE ORDERED that Simmons' motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Doc. 15) is DENIED and the petition is DISMISSED WITH PREJUDICE.

                                       /s/   Thomas D. Schroeder
                                     United States District Judge

July 26, 2016